The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, AR 72022
Dear Senator Broadway:
You have presented the following question for my opinion:
 May a mental health provider furnish mental health services and treatment to a minor without first obtaining parental consent?
Response
The answer to this question will depend upon a number of factual matters that have not been provided to me. The most important of those determinative factual matters are: (1) what is meant by the terms "mental health provider" and "mental health services and treatment"; and (2) the circumstances under which the mental health services and treatment are provided to the minor.
For purposes of addressing your question, I will assume that you have used the term "mental health provider" to refer to psychologists, psychological examiners, counselors, and social workers, and that you have used the term "mental health services and treatment" to refer to the types of services and treatment that are provided by psychologists, psychological examiners, counselors, and social workers.[1] I will also assume that your question envisions a scenario in which a court has not ordered the provision of mental health services and treatment to the minor (see e.g., A.C.A. § 9-27-330(a)(2), -331(d)(1)), and in which the minor is not participating in a formal treatment program (see, e.g.,
A.C.A. §§ 20-64-602; 20-64-1003.) Finally, I will assume that your question refers to an unemancipated minor.
As an initial matter, I point out that school counselors and other school officials are authorized by law to provide various services that could be construed as "mental health services and treatment" to students in certain circumstances. The statutes authorizing such services do not state that parental consent is required in these circumstances. For example, under A.C.A. § 6-18-1001, all public school districts are required to develop and implement a plan for providing "student services" to all students. The term "student services program" is defined broadly as follows:
 (a) A "student services program" is defined as a coordinated effort which shall include, but is not limited to:
 (1) Guidance and counseling services, which shall include, but are not limited to:
 (A) The availability of individual and group counseling to all students;
 (B) Orientation programs for new students at each level of education and for transferring students;
(C) Academic advisement for class selection;
 (D) Consultation with parents, faculty, and out-of-school agencies concerning student problems and needs;
(E) Utilization of student records and files;
 (F) Interpretation of standardized testing and dissemination of results to the school community;
(G) The following up of early school dropouts and graduates;
(H) A school-initiated system of parental involvement;
 (I) An organized system of informational resources on which to base educational and vocational decision making;
 (J) Educational and career guidance, including advising students on the availability of vocational and alternative programs that could provide successful high school completion opportunities for students at risk of dropping out of school;
 (K) Coordinating administration of the Test for Adult Basic Education or the General Educational Development pretest to students by designating appropriate personnel, other than the school guidance counselor, to administer the tests; and
 (L) Classroom guidance which shall be limited to thirty-minute class sessions, not to exceed three (3) per day or ten (10) per week;
 (2) Psychological services, which shall include, but are not limited to, the following:
(A) Evaluation of students with learning or adjustment problems;
(B) Evaluation of students in exceptional child education programs;
 (C) Consultation and counseling with parents, students, and school personnel;
 (D) A system for the early identification of learning potential and factors which affect the child's educational performance;
 (E) A system of liaison and referrals, with resources available outside the school; and
 (F) Written policies which assure ethical procedures in psychological activities;
 (3) Visiting teacher and school social work services, which shall include, but are not limited to, the following:
 (A) Providing casework to assist in the prevention and remediation of problems of attendance, behavior, adjustment, and learning; and
 (B) Serving as liaison between the home and school by making home visits and referring students and parents to appropriate school and community agencies for assistance;
 (4) Occupational services, which shall include, but are not limited to, the dissemination of career education information, and follow-up studies;
 (5) Group conflict resolution services, which shall include, but are not limited to, the following:
 (A) Educational and social programs which help students develop skills enabling them to resolve differences and conflicts between groups;
 (B) Programs designed to promote understanding, positive communication, and a greater utilization of a race relations specialist or human relations specialist to assist in the development of intergroup skills; and
(C) Programs designed to prevent bullying.
 (6) Health services, which shall include, but are not limited to, the following:
 (A) Students with special health care needs, including the chronically ill, medically fragile, and technology-dependent, and students with other health impairments shall have an individualized health care plan.
 (B) Invasive medical procedures required by students and provided at the school shall be performed by trained, licensed personnel who are licensed to perform the task subject to § 17-87-102(2)(D) or other professional licensure statutes. The regular classroom teacher shall not perform these tasks.
 (C) Custodial health care services required by students under an individualized healthcare plan shall be provided by trained school employees other than the regular classroom teachers; and
 (7) The distribution of a suicide prevention public awareness program developed for distribution by the interprogram task force established by the Lieutenant Governor's Teenage Suicide Prevention Task Force.
 (b) School counselors shall spend at least seventy-five percent (75%) of work time each week providing direct counseling related to students and shall devote no more than twenty-five percent (25%) of work time each week to administrative activities provided that the activities relate to the provision of guidance services.
A.C.A. § 6-18-1005.
The above-quoted statute gives school counselors and other school personnel very broad authority to render services that could be construed as "mental health services and treatment," and does not require parental consent.
School officials are granted explicit protection from liability for providing such services in cases involving the danger of suicide. That protection is stated in A.C.A. § 6-17-107(b), as follows:
 (b) Teachers, school counselors, school health care providers, and other school personnel shall be immune from any civil liability for providing counseling, referral, emergency medical care, or other assistance offered in good faith to suicidal students or other suicidal youth. "Suicidal" refers to a person who poses a substantial risk of physical harm to himself as manifested by evidence of, threats of, or attempts at suicide or self-inflicted bodily harm, or by evidence of other behavior or thoughts that create a grave and imminent risk to his physical condition.
A.C.A. § 6-17-107(b).
The rules and regulations that have been promulgated to implement the required student services programs do not address the question of parental consent. See Arkansas Department of Education RegulationsGoverning Public School Student Services. Thus, the law clearly authorizes public school counselors and other public school personnel to render a broad range of services that could be construed as "mental health services and treatment" to minors in a wide variety of circumstances, and does not require the parents' consent in these situations.
The law does not specifically address your question as applied to situations other than those involving public schools (and other than those involving a court order or a formal treatment program, which I have explicitly excluded from this discussion). The statutes and regulations governing psychologists, counselors, and social workers do not address the question of parental consent to treatment of minors, nor do they define the terms "client" or "patient," or set forth any particular requirements for establishing a relationship with a client or patient.See, e.g., A.C.A. § 17-97-101 et seq. (psychologists and psychological examiners); A.C.A. § 17-27-101 et seq. (counselors); A.C.A. § 17-103-101et seq. (social workers); Arkansas Board of Examiners in Psychology Rulesand Regulations; Rules and Regulations of the Arkansas Board of Examinersin Counseling; Regulations of the Arkansas Social Work Licensing Board.
Pending judicial or legislative guidance on this issue, it is my opinion, that in such scenarios, a duly licensed mental health provider may provide mental health services and treatment to a minor without obtaining parental consent if the minor is of sufficient maturity and intelligence to give consent on his or her own behalf. The question of whether a minor possesses the requisite maturity and intelligence is a question of fact that must be determined on a case-by-case basis.
In the absence of guidance from the sources of law that govern psychologists, psychological examiners, social workers, and counselors, I find it reasonable to apply, by analogy, the principles that govern informed consent to physical medical treatment. The applicable statute is A.C.A. § 20-9-602, which governs the issue of who can consent to medical or surgical procedures. That statute states in pertinent part:
 It is recognized and established that, in addition to such other persons as may be so authorized and empowered, any one (1) of the following persons is authorized and empowered to consent, either orally or otherwise, to any surgical or medical treatment or procedures not prohibited by law which may be suggested, recommended, prescribed, or directed by a licensed physician:
* * *
 (7) Any unemancipated minor of sufficient intelligence to understand and appreciate the consequences of the proposed surgical or medical treatment or procedures, for himself[.]
A.C.A. § 20-9-602(7).
One of my predecessors in office opined that the above-quoted language has the effect of conferring upon the medical service provider the responsibility of determining on a case-by-case basis whether a minor is of sufficient intelligence to consent (or withhold consent) to the proposed medical treatment. See Op. Att'y Gen. No. 95-379. My predecessor further opined that requiring the medical provider to make this determination on a case-by-case basis is reasonable, because the provider is in the best position to evaluate the maturity and understanding of each minor in question. Moreover, placing this responsibility on the provider on a case-by-case would be preferable to imposing a rigid rule concerning the consent of minors, in light of the wide variety of intelligence and maturity levels of minors, and the possibility of incongruent results that could accordingly follow from the imposition of such rules.
In my opinion, the same reasoning applies to the question of whether a minor can consent to the provision of mental health services and treatment. The provider of such treatment is in the best position to evaluate the intelligence and understanding of the minor, and the ability of the minor to grant consent. Moreover, professional, licensed mental health providers are under an ethical duty not to exploit their relationships.[2] See Regulations of the Arkansas Social Work LicensingBoard, Standard G: Client Relationships; Arkansas Board of Examiners inPsychology Rules and Regulations, Section 16 (adopting the EthicalPrinciples of Psychologists of the American Psychological Association);Ethical Principles of Psychologists of the American PsychologicalAssociation, Section 3.08; Regulations of the Arkansas Board of Examinersin Counseling, Section 1.3 (adopting the Code of Ethics of the AmericanCounseling Association); Code of Ethics of the American CounselingAssociation, Section A: The Counseling Relationship.
My conclusion regarding this matter is bolstered by provisions of the codes of ethics governing counselors and psychologists that require such providers to act in the best interest of a client who, by reason of minority, is not legally capable of granting consent. See Code of Ethicsof the American Counseling Association, Sections A.3 and B.3; EthicalPrinciples of Psychologists of the American Psychological Association,
Section 3.10.
Accordingly, I conclude that under Arkansas law, duly licensed mental health providers can render mental health services and treatment to minors without parental consent, if the provider determines that the minor possesses sufficient intelligence and maturity to grant consent.
I must discuss one final matter: the balance between the constitutional rights of parents and children. The U.S. Supreme Court has long recognized that the right of parents "to make decisions concerning the care, custody, and control of their children" is a fundamental liberty of parents that is protected under the Due Process Clause of theFourteenth Amendment to the U.S. Constitution. Troxel v. Granville,530 U.S. 57, 66 (2000);Santosky v. Kramer, 455 U.S. 745 (1982);Parham v. J.R., 442 U.S. 584 (1979); Wisconsin v. Yoder,406 U.S. 205, 232 (1972); Prince v.Massachusetts, 321 U.S. 158 (1944); Stanley v. Illinois, 405 U.S. 645
(1972); Pierce v. Society of Sisters, 268 U.S. 510 (1925); Meyer v.Nebraska, 262 U.S. 390, 399, 401 (1923). However, this constitutional right of parental authority is not absolute. The Court has explicitly recognized, in a variety of contexts, that children also have constitutional rights. See, e.g., Brown v. Bd. of Educ. of Topeka,347 U.S. 483 (1954) (equal protection); Carey v. Population Servs. Int'l.,431 U.S. 678 (1977) (privacy); Tinker v. Des Moines Sch. Dist.,393 U.S. 503 (1969) (expression). Indeed, the Court stated in Bellottiv. Baird, 443 U.S. 622 (1979):
 A child, merely on account of his minority, is not beyond the protection of the Constitution. As the Court said in In re Gault, 387 U.S. 1, 13 (1967), "whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."
Bellotti, supra, at 633.
In balancing the constitutional rights of parents and children, the Court has allowed children's rights to override the rights of their parents only in situations in which denying the child's rights would be far-reaching and detrimental. See, e.g., Bellotti, supra; PlannedParenthood of Missouri v. Danforth, 482 U.S. 52 (1976) (striking down parental consent requirements in state abortion statutes). These cases also indicate that the question of the balance between children's rights and parental rights must be undertaken anew in each case, with special consideration being given to the facts of the case, including the maturity of the child, and the effect on the child of giving precedence to the parents' rights. For further discussion of this issue, see Op. Att'y Gen. No. 2001-258.
On the basis of these guiding principles, I conclude that if the provision of mental health services to minors without parental consent is authorized by the state, the constitutional rights of both the parents and the minor could be implicated. A balance between these rights must be considered in each case, taking into consideration all of the relevant facts, including the intelligence and maturity of the child, and the consequences of denying the service or treatment to the minor.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] By limiting my interpretation of your terms in this way, the discussion herein will necessarily apply primarily to individuals and activities that require state licensure. However, I recognize that in common parlance, some "mental health providers" and some "services and treatment" could be construed to include individuals and activities that do not require state licensure, such as clergy counseling or weight loss counseling. See, e.g., A.C.A. § 17-27-103. The conclusions I reach in this opinion — i.e., that the outcome will depend whether the minor possesses the intelligence and maturity to grant consent — would extend to those individuals and activities as well.
[2] It should be noted that I do not address herein the question of who is responsible for the mental health provider's fee.